The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Our next case is 22-1700, Ortega-Cordova v. Garland. Mr. Winograd. Thank you, Your Honors. The primary question in this case is whether the 2012 version of Virginia's solicitation statute categorically qualifies as a crime involving moral turpitude. Amicus intends to address why the very existence of a legitimate debate over whether to legalize prostitution itself demonstrates that it is not inherently reprehensible. I would like to focus today on a more narrow argument, which is that even if this debate was not occurring, scenarios exist in which it is not reprehensible for one consenting adult to solicit sex from another. And even if the Court is not prepared to accept that argument, we think it should, at a minimum, return the case to the Board for further consideration, preferably by a three-member panel. Now, on the merits, we set out a number of examples in the brief regarding the release of the acts criminalized. But I'd like to offer two more today for the Court's consideration. First, imagine a man who is gay or a woman who is a lesbian remains in the proverbial closet because they come from a family where homosexuality is not tolerated. That person would like to find a partner with whom they could be sexually intimate, but they are so afraid that their family will learn of their sexual orientation that they do not want to risk going to a bar or using an app or finding a partner in a more conventional way. So they instead solicit the services of a reputable sex worker acting of their own accord voluntarily who promises that they will be discreet. Now, even if one thinks that such conduct is not admirable and should be illegal, I think few people would say that it is reprehensible, given that the man or woman's only other options were to be shunned by their family or to forego sex altogether. And if that example doesn't move you, imagine a soldier who was sent into combat in a foreign theater and receives such a grievous, disfiguring injury that when they return, and they are not married, when they return, they are simply unable to find someone who is willing to be sexually intimate with them. So they, too, turn to the services of a reputable sex worker who is acting voluntarily. So even if, you know, even though these examples may be hypothetical, may or may not be, one thing that cannot be disputed is that some people go decades or even their entire lifetimes wanting to experience but never getting to experience the physical and emotional satisfaction that comes from sexual activity with another person. Those arguments hardly address the moral basis for a society not wanting to have prostitution as part of a business in the society. I mean, the people, the sex workers, theoretically do it voluntarily, too, but when you're questioning whether it's a moral norm, you have to look a little bit at the broader picture as to what's involved. And society has made a judgment about selling sex for money as to what it does to a society, what it does to the women, what it does to the men, and regardless of not even addressing the other relationships you brought up. But it seems to me courts have recognized and the moral norm exists. Now, sure, there's an effort to decriminalize, but we're here in, what, Virginia? And they haven't decriminalized it, and it's still recognized as a morally depraved practice. A few responses, Your Honor. First, under the categorical approach, the court always has to look at the least of the acts criminalized. That is the nature of the approach. That's why it's called the categorical approach. Except we're looking at a crime of moral turpitude. We're not looking at the conduct that's involved or the potential conduct. You're trying to describe whether prostitution or the facilitation of prostitution is morally depraved or recognizes as violating an accepted moral norm. I think that type of analysis is quite distinct from the elements of an offense in which you determine whether the elements are violent crime or whatever the standard is. Well, I mean, I would point to theft as an example. Certainly society has a judgment that there is a moral norm against theft, but this court has held in terms of, for example, Maryland's theft statute, that it reaches such de minimis conduct that is not reprehensible. And in terms of the larger- Can I understand that line? So you're making a jump from the least of the conduct criminalized to suggest that we ought to consider the justification for the action, right? So not the de minimis nature, but take theft as the example. But, you know, if it was a significant theft amount, but, you know, a la les mis, someone was stealing in order to feed the poor children of their sister, we don't consider the justification. We consider the least criminal conduct that's criminalized, but not the justification. And the examples that you've provided us are not at all about the conduct. They're about the justification. And it might be that feeding your sister's children is a laudable justification. It might be that the reasons for the conduct that you've alleged are good justifications in some sense, but it doesn't go to the categorical approach at all. And so can you point me to a case that instead of looking to the least conduct, it looks to whether the justification for the conduct makes us, you know, feel sorry for the person? I think I'm not aware of any, but I think that's because prostitution is just sui generis in this respect. Well, but in the theft cases, we don't ask, you know, there could be a la mis story, right? So, like, when we look at theft, we don't ask that question. I'm not aware of any case where we've said whether it is a crime of X, whatever it might be, that we look at, like, whether there's a justification for the conduct. We look at the conduct. Well, even in the theft example, it is actually an open question in the circuit whether Petty Larson is a CIMT. But even assuming that it is, that is because regardless of the person's motivations, they are causing actual harm to another person. They are intending to deprive the victim of property that they won't get back. There is actual harm. In the case of solicitation of prostitution, the only intent. Are you aware of any case that has suggested that we look to justification? I mean, I understand why you want us to look to it, right? I totally get why you want us to. What I can't understand is why we would. It doesn't make any sense to me to look at it that way. But also, is there any support for doing so, right? That's the premise of the argument in your brief, it seems, and that seems to be the premise of the argument that you've made here. But is there any support for us looking to the justification for someone's criminal conduct as opposed to what is the least criminal conduct that's made criminal? I'm conceivably not aware of any other authority for that proposition, but I just think in this particular case, they can't be split. Because otherwise, there would be no least of the acts criminalized. Otherwise, all acts of prostitution or solicitation would be the same. I think what makes this conduct the minimum conduct is that sometimes some people simply have no other way to obtain sexual gratification. Now, if I could turn to the board's decision in this case, I think the board did not truly grapple with the question presented because it didn't try to identify the least of the acts criminalized and explain why those acts specifically involve moral turpitude. It simply cited agency precedent for more than half a century ago and summarily stated that solicitation is reprehensible because of the commercial, exploitative, transactional nature of the act. But as the government has disputed, none of the decisions that the board cited involved simple solicitation to involve statutes that targeted people who ran prostitution as a business. And there's a world of difference between running prostitution as a business and simple solicitation, just as there is a world of difference between running a drug trafficking ring and simple possession. Now, the board also cited Matter of W for the proposition that prostitution itself involves moral turpitude, but Matter of W was not issued by the board. It was issued by the former INS and therefore has never been binding on the board. And even if it was binding, its analysis was simply conclusory. The decision says, without citation, it is well established that the crime of practicing prostitution involves moral turpitude. We would submit that that is akin to an attorney claiming that a point is so obvious that it does not require citation. When attorneys do that, it's usually because they cannot find a citation to support the ostensibly obvious point. Can I ask a question about how we should go about looking at this case? So, you know, hanging over all of this is the question of what deference, if any, to give to the agency decisions in this case. We've got the, I guess at some point the Supreme Court is going to tell us exactly whether or not Chevron lives or dies or maybe has a different shelf life of some sort. But so what would you have us do in this case? I mean, obviously I think we're bound to apply the law as it exists, and we've got this Matter of W case, which you say is not on all fours because it involves simple prostitution, not solicitation. But at some level, I think, given the case law, we've got to give deference of some sort, I think, to the agency. And so is it deference to the agency's interpretation of what a crime involving moral turpitude is? Or is it agency deference to its application of that definition to this offense? Which one or both? Sure. Well, if I could address the timing first. We haven't asked the Court to hold this case in abeyance pending the Supreme Court's decision because our position is that there is nothing, there is no decision that could even potentially receive Chevron deference. But if the Court is thinking about deferring under Chevron at all, we would ask it to simply wait until the Supreme Court decides slope or bright and relentless, which will be at most within the next eight weeks. So if the Court would otherwise defer under Chevron, we would ask it to hold the case in abeyance before it issues a decision to see what the Supreme Court says. Now, with respect to Matter of W, to be honest, our contention is not simply that it's not on all fours because it involved prostitution rather than solicitation. It's that it was not issued by the Board itself. It was issued by an agency, the INS, that doesn't exist and is not binding on the Board. Let's assume I reject that proposition. It's equivalent to a Board decision. Then what? What do we do? Well, then I would still say it's not on all fours. And I would say at most it should get Skidmore deference in that scenario. But even then, it's not clear what the fate of Skidmore will be after the Supreme Court's decision. So I would say just given the time it will receive the Supreme Court's decision within two months, I think if the Court would otherwise defer in any respect to the agency, I would ask it to simply wait to await further guidance from the Supreme Court. We would only do that if we found that we needed to, right? If we could reach that decision de novo without regard to giving deference to the agency, then we could skip that, right? If no deference need be applied, if we're going to reach the same result, we wouldn't have to do that. We've done that recently in another crime of moral turpitude case where, in essence, we skip that step because on the merits it reaches the same result. That is correct, Your Honor. If the Court will reach the same conclusion without deference, then it doesn't need to wait for the Supreme Court. But this is just to conclude and to return to Judge Niemeyer's original question. And Amicus will address this more. If nearly half the country believes that certain conduct should not be illegal at all, we think that conduct by definition cannot shock the public conscience, which is the ultimate test for a crime involving moral turpitude. All right. Thank you, counsel. Ms. Padmanabhan. You're jumping the gun over there.  Thank you, Your Honors. Good morning. May it please the Court. Aditi Padmanabhan for Amicus, the Sex Workers Project of the Urban Justice Center. The issue before this Court, whether sex work-related crimes involve moral turpitude, is one on which modern society is deeply divided. This is an issue on which people on all sides of the debate have deeply held views and I think on which reasonable people can disagree. And people are actively disagreeing and debating in legislatures, in newspapers, and in other public forums across the country. The Sex Workers Project is itself deeply involved in the movement to fully decriminalize consensual commercial sex between adults. But I want to be clear that to grant this petition for review, the Court need not take a particular side in the ongoing nationwide conversation on this issue. Instead, it's the very existence of this conversation and evidence of a deeply divided society that defeats classifying convictions like the petitioner's as CIMTs. Is there any evidence that Virginia is hesitating on its views about prostitution? I'm not sure about Virginia specifically. Well, that's what we have before us. I would respectfully disagree, Your Honor, because you're talking about a federal statute, crime involving moral turpitude in the INA. And the violation of a crime here is a violation of criminal law in Virginia, which Virginia believes should be criminalized. Even if criminalization is relevant, I'm not sure criminalization is relevant to the issue of moral turpitude. I mean, moral norms are not totally parallel with criminal norms. We have moral norms that are not criminalized, and we have moral norms that are criminalized. And so even if Virginia were to decriminalize it, we would still be left with a question of whether it was a crime of moral turpitude. So a couple of responses to that, Your Honor. First, when it comes to the INA term, the board has been clear that the relevant question is whether a crime involves a moral norm, that a crime violates a moral norm, that, quote, prevails in the United States as a whole, regarding the common view of our people concerning its moral character. So I don't think that the question is what Virginia does or doesn't do. But, you know, to Your Honor's second point, I agree with you completely that there's a distinction between, I mean, the question of whether something is criminalized is the beginning of the analysis for crimes involving moral turpitude, not the... And many people would argue that using addictive drugs and becoming high on drugs is morally wrong because you lose your free will, you lose your ability to conduct life, you lose your job, you lose your family, even if it were decriminalized. And so my whole point is I understand your point that there is a broad discussion on what you're talking about, but I'm not sure that advances the ball very much. Well, I think, you know, based on the agency's own analysis that you need to have a common view. The existence of the debate suggests that there is no common view. And let me just say why I think the agency's definition makes... You're just missing my whole point. The fact that you want to decriminalize something means you're not going to put somebody in jail for it, but it doesn't mean it's not a moral norm or a generally accepted moral norm. I see your... frowned on prostitution and what it does to a society, what it does to the women involved, what it does to the men involved, what it means, elevates the physical appetites above this and that. You can just talk about it at length and get in that discussion. But here we have the INA that has said facilitating aspects of prostitution, facilitating prostitution, does involve moral turpitude, and I guess you're asking us to reverse that. I understand your point now, Your Honor. Thank you. So I think that the debate isn't just about decriminalization. It is also about the morality of the underlying conduct. And advocates, including the Sex Workers Project, would argue that there is nothing immoral about consensual commercial sex. Now, you don't have to agree with that, Your Honor, but if you agree that there is an ongoing conversation... I think it's fairly superficial the way it's presented. That's my only comment. We don't need to get into a debate about it, but about what the movement is and the women who want to carry on the prostitution business. But it seems to me that it's a much more sophisticated question to ask where society sees the moral norm on something like that. I agree that it is, Your Honor, but I think all of the evidence points to the fact that society is currently debating both the morality and the legality question. Can I ask one question, Chief, if you don't mind? Do you think, and I understand this isn't what you think the question is, but bear with me for a second. Do you think that Virginia passed this law based on morality? Was that the reason that they passed the law, when they passed it? I think that there are both moral and regulatory reasons why states might want to criminalize prostitution. And what's the basis for believing that when Virginia passed this law that they were thinking about the regulatory reasons as opposed to the moral reasons? I mean, I thought this was the setup question. I think maybe I was going to try to get to a different point, but if you don't agree with that, maybe that's a good enough answer for me. I'm sorry, may I respond to that? So I'm not familiar about Virginia's reasons, but of course you have to ask about the country as a whole. And there are states that justify their anti-prostitution laws primarily on regulatory reasons. So when California's anti-prostitution law was challenged about a decade ago, California's primary reasons were all regulatory, that it reduces drug use, that it reduces the spread of STDs, that it reduces the sort of collateral consequences which include trafficking. So I think, you know, in society today, one of the reasons perhaps that these crimes remain criminalized is not because modern society believes it's immoral, but because modern society believes there's good regulatory reasons. Can I ask, so how do we gauge where society is? You say that society is debating the morality and alleged depravity of prostitution, but if there's a debate, that means that there are people on both sides of the debate. And so, I mean, what is it, tie goes to the runner? I mean, how do we get to what the answer should be? I don't think so at all, Your Honor. I think that it has to be a view that's a moral norm that's agreed to by there should be some widespread consensus on it. And here's why, right? Congress, in enacting the crime-involving moral turpitude statute, passed a law that's broad and, you know, rather vague, as many jurists have noted, for decades. And the board's limiting definition by saying you have to have a prevailing view on the issue gives this broad and undefined term some more precise and ascertainable meaning. And importantly, it also prevents a situation in which individual adjudicators impose their idiosyncratic moral views. So take an example where society is split 51% to 49%. Then whether or not someone's getting deported for moral turpitude turns on the views of the particular adjudicator deciding their case. And so it's that eventuality, that kind of arbitrariness and perhaps vagueness, that the agency sought to head off at the pass by creating this limiting definition and saying it has to be in society. But in your example you just gave, then, 51% to 49%, the prevailing view is for or against the moral depravity of a crime, right? So is it that mathematical? I don't – no, Your Honor, because I actually think that even if – I think that if you have, you know, vast majority of society thinks something is immoral and you have a fringe element in society that says it's moral, then I think you would say that there is a common view of our people and therefore that offense involves moral turpitude. But if you have, you know, a sizable percentage of the population where you do hear saying that the conduct shouldn't be criminalized at all, then I don't think adjudicators should be in the – We make that jump from the statistic – I mean, statistics are dangerous, right? The chief likes to talk about Mark Twain for good reason. But you could believe something is immoral and yet should not be criminalized, right? Those are not inconsistent views. Lots of us have views about morality that were we in the legislature, we might not vote to enact as criminal laws. And so even if we, like, were looking at your statistics, do they help us answer the actual question? Well, I have a couple of responses to that, Your Honor. When it comes to sort of polling lay people, you know, we're not polling lawyers or philosophers. So when people are saying that they think something should be decriminalized, I think it probably means that they're thinking about this. But isn't that just inconsistent with the answer you gave me to suggest that these are all regulatory, right? The reason that we've outlawed prostitution is just purely regulatory. Nobody's, like, interested in the morality anymore. I think it's a question in flux, Your Honor. I think people are disagreeing about both the morality and the legality. It sounded to me like your answer earlier about the California, is that they wanted to reduce drug trafficking, and there's a moral value there. The legislature didn't want any contribution to drug trafficking because that was deeply destructive of moral life and values, broke up families, broke up jobs, and so forth. So they may be assessing on a regulatory basis those things, but I don't even see the debate being – I've read about the decriminalization business, but I don't see any debate about whether it's moral or immoral. The whole thing comes down to consenting adults, and two adults can consent to do immoral things. So on that latter point, Your Honor, I think that advocates like the Sex Workers Project, which are very involved in the fight for decriminalization, make explicitly moral claims that if you believe in sexual autonomy, then there's nothing inherently immoral about buying and selling sex between consenting adults. Now, I'm not suggesting that the court has to agree with that, but I'm just saying that this debate – that basically sex is a normal thing, and between consenting adults, why are we going to criminalize it? That's the basic thing, and there are a lot of movements about decriminalizing conduct where it's voluntary and doesn't hurt other people, like wearing helmets on bicycles. The question is, does the legislature legitimately impose helmets even though the guy who's riding the bike says, I don't want to wear a helmet, and I'm the one that's going to be hurt? I mean, these are the types of debates that go on, but society has interests, but I'm not sure they're tied one-for-one, like you say, to the moral discussion. Well, I think I sort of agree with both you and Judge Richardson in that there's sort of nuanced questions of whether when something is criminalized or decriminalized, whether that's being done for regulatory or moral reasons. But I think when you look at the way in which society is talking about this issue, there's both sort of a regulatory element as well as a moral element. And just to give you one example, the sitting vice president, when she was running for president, came out and said, yes, I think when you're talking about consenting adults, it shouldn't be decriminalized. I mean, I think she was talking about this, acceding in some ways to the moral point that folks like the Sex Workers Project would make, which is that there is nothing fundamentally different about sex work than many other forms of labor, both legal and illegal. Well, that overlooks a lot to say that. I would say carrying on the profession of law, for instance, is quite a bit different from selling your body with respect to one of the most intimate relationships that humankind has. That's the judgment society has made over the years. Yes, Your Honor, I see that distinction. But I just want to say that that's a little bit in the eye of the beholder. When I was taking the Amtrak down here from Baltimore, I walked past a shoe shiner, and some people might see that work and say, that's degrading. Others people might see that work and say, that's an honest day's work. I think that's actually the distinction. Some people would say that about the same about prostitution. Some might say it's degrading. Others might say it's just a way to make a living. People are holding both of those positions. It's because of that deep divide in society, the fact that these are social norms that are not set in stone, and that we've seen an enormous transformation in those norms in recent decades, that I think you should not hold that crimes involving prostitution involve CIMTs. Thank you, counsel. Thank you. Arbeiter. Okay, good morning. May it please the court, Taryn Arbeiter, on behalf of Attorney General Merrick Garland. This court should follow every court of appeals to have considered the question and hold that solicitation of prostitution is a crime involving moral turpitude. The court can take the same path that was taken by the Sixth Circuit, the Eighth Circuit, the Ninth Circuit, the Tenth Circuit, and the Eleventh Circuit in finding that the board's longstanding precedent holding that prostitution and prostitution-related offenses are crimes involving moral turpitude is due respect from the court, and also that this related question of whether solicitation of prostitution, which furthers the act of prostitution, also is a crime involving moral turpitude of biological extension. I want to address one of my opponent's arguments that there may be situations in which this court could look to the justification for engaging in solicitation of prostitution. As Judge Richardson observed, the justification is not an element of the offense. And just like other crimes that this court looks at to determine whether or not they're crimes involving moral turpitude, this court need not look at that. But I would like to point out that our opponents rely on cinematic examples from Hollywood and legal imaginations rather than actual court cases that criminalize this type of behavior. Can I ask a slightly different question? So your colleagues on the other side and amicus rely on this Lopez Meza case, which is that instead of looking at the meaning of the words at the time they were enacted, we instead looked at contemporary moral standards susceptible to change based on prevailing views. Is your view that the BIA has afforded deference on that definition? Yes, Your Honor. This court should afford deference to the board's interpretation of crime involving moral turpitude and how the board defines that. Is your take that that is the board's interpretation of what a crime of moral turpitude is? You don't seem to cite it, or maybe I missed it. I just tried to skim through it. But the other, your colleagues do, and I just was wondering whether the board or the department had a view on whether that was the proper definition of a crime of moral turpitude and whether it was afforded deference. So the board repeatedly says that a crime involving moral turpitude is contrary to accepted rules of morality and duties owed between persons or to society in general. And yes, the board does acknowledge that those views may change over time. But that debate... That's an interesting proposition. I don't know if it's appropriate to get too far into philosophy, but, you know, the Carthaginians sacrificed their eldest son, and that was perfectly legal and accepted at that time. Yet every society since has assessed that as a moral violation. You don't sacrifice humans. I think some of the Central American Indians also did that, and sacrificed humans. Norms in most philosophical discussion don't change. They're based on... They may be analyzed and seen differently, but they start with values that we have common as human values, life probably being the number one value. And so we say it's a moral norm to not... in many circumstances. And as a consequence, if you had a debate where society said, oh, I think we're an occult, we'll all commit suicide, we wouldn't say that's an accepted moral norm. We would all say that violates a moral norm, even though they agreed upon it. So the difficulty in getting to moral norms is more complex than just what the people vote on, I think. I think a moral norm is something that's generally accepted because it's recognized as a truth, but the idea that we can just vote away a moral norm doesn't seem to carry a lot of weight as to what I understand a moral norm to be. Your Honor, I would agree with that. I will say that we don't need to wade into that definition because every legislature except for the state of Maine has continued to make prostitution and solicitation of prostitution illegal and, in fact, Maine still makes solicitation of prostitution illegal. The problem with that is that's only one of the elements of a crime involving moral turpitude. You need to have a crime or else you don't even get to the definition. So then the question is, is that crime categorically, in its categorical form, still a crime involving moral turpitude, right? Correct, Your Honor. And in addition to being illegal, the fact that each of these legislatures has outlawed this also shows that it's viewed as moral turpitude. Can I ask you a question? So you said we owe a level of respect to the BIA's interpretations of crimes of moral turpitude, but with respect to this matter of W opinion that you all rely on substantially, the sum and substance of that analysis is that it is well established that the crime of practicing prostitution involves moral turpitude, period. I mean, what are you supposed to do with that? That seems like pretty shallow reasoning to me. Your Honor, it is, and perhaps at that time, I think they cite also a matter of P, which is an older decision. It seems like all these definitions are sort of building on each other, saying the same thing, but not explaining why in the context of the way your colleagues would have it, in the context of modern society, why that still is the case. That's sort of the issue, right? Yes, and I think it goes to how deeply ingrained our society's belief is that exchanging money for sex is socially degrading and inherently exploitative. However— For a long, long time, we thought that homosexuality was also degrading and exploitive and illegal, and norms have changed, and I think most of us in this room, I hope, would agree that that was for the good. So it's not the case that norms don't change. The question is just where do we draw the line? Yes, Your Honor, and this Court should not be the one to draw the line. Well, here we are. Well, what we can look at instead of whether 51% or 49%, according to various surveys, what we can look at is that it's outlawed by every legislature, with the exception of a few counties in Nevada. And we can also look at, in the one area in Maine where decriminalization does exist, that statute calls it commercial sexual exploitation, or at least was proposed to be called commercial sexual exploitation. And the reasoning given by the sponsor of that bill was to still continue to criminalize those who create the demand for the commercial sex industry, for the reason being that it is socially degrading and inherently exploitative. And so really, although it's an imperfect science to understand what society believes, one really clear indication is the fact that all these legislatures still criminalize it and that the rationale given is that it is exploitative. Your colleagues on the other side point to friends overseas who apparently take a different view of this offense. Is that all relevant, how societies in Europe and elsewhere might view this? You know, I think it could be slightly relevant, but I think this is like a matter of Ortega-Lopez, which the board... Justice Scalia would be turning over in his grave right about now. I don't... We're at least arguably bound by Roper, and Roper did that, right? Just nod. Okay. I'm not sure... That was a rhetorical question. Okay. Okay, so... But the thing is I want to draw your attention to a matter of Ortega-Lopez, which is a published board decision concluding that animal fighting is a crime involving moral turpitude. And in that example, you know, the majority of jurisdictions have begun to outlaw animal fighting, and they point to the fact that, like, there are a few jurisdictions that allow it, but that isn't indicative of some sort of, you know, moral divide or some inability to call this a crime involving moral turpitude. And for the same... You know, on the same token, there are other countries that allow animal fighting. It doesn't result in our conclusion that animal fighting is morally okay. And so, yeah, there might be other societies that view it differently or have at least decriminalized it, which, as we have acknowledged, might be different from the morality. But that does not have a significant bearing on this court's conclusion. Whose heads do we count? I mean, you pointed quite rightly to all the legislatures, which, by and large, except in Nevada and, I guess, Maine now, partially decriminalizes the act, I mean, the prostitution but not the solicitation. Is it the legislative heads? Is it the views of society, as your colleagues on the other side would have it? I mean, do we have a poll? I mean, how do we decide? Well, luckily, this court need not be the first body to take a stab at that because the board does deserve some respect in this area. It is interpreting the INA, an ambiguous term in the INA, and they have decided what kind of conduct is encompassed in that. And so even if not given Chevron deference, Skidmore deference can be given to the board's determination that prostitution and prostitution-related offenses... Do you think Skidmore will survive if Chevron were undermined? Skidmore is essentially, I mean, it stands for the proposition that the courts can give as much deference as due to an opinion, an agency opinion, based on how reasoned it is. I read you the reasoning of those opinions. It's well established that it's a crime of moral turpitude, period. That's not much in the way of reasoning. Well, so if this court would like to look at... Some places do it. Ortega-Lopez, you know, goes on to talk about they're morally reprehensible, they're not on account of the presence of harm or the need to protect, but because of the socially degrading nature of commercialized sexual services and incestuous sexual relations, that these crimes offend the most fundamental values of society. I mean, that's the reasoning that I think we would all... If there is such reasoning, that's what it is, right? Correct, Your Honor. And in matter of SEMI, which is a more recent board decision, it's a three-member decision, but it's unpublished. However, it does give persuasive reasoning along those lines, explaining that solicitation of prostitution is socially degrading, it harms society, and it violates our most fundamental moral beliefs. In addition to that, I will point out that our opponents try to divorce solicitation of prostitution from the risk of exploitation, especially of women and young people, but it is inherent in the commercial sex industry, and many people enter the industry either as young people or in some way coerced or unwillingly, and our laws by wholesale criminalizing prostitution and solicitation of prostitution recognize that as well. We cannot divorce this from the larger industry of trafficking. So if there's any further questions, I'm happy to answer those. Thank you very much, counsel. Your Honor. Thank you, Your Honors. I think the point to keep in mind about the broader debate is that other than the legalization of drugs, there are no other crimes where this debate could even conceivably be occurring. It's just inconceivable that any member of a state legislature would introduce a bill to decriminalize theft or rape or murder or literally any other crime that qualifies as a crime involving moral turpitude. You don't think in California they're talking about whether shoplifting is a crime? It sort of seems like that's part of the debate going on in California. Not at all, Your Honor. It is absolutely a crime. The issue is enforcement and where the threshold for misdemeanor theft becomes. Whether it should be enforced, right? That would be the same debate. Not at all. It would shock me if any legislator in California said it is perfectly legal to shoplift. That would never happen, even in California, where I'm from. That would certainly never happen. But what we're seeing now is, in Maine, actual decriminalization of the underlying conduct. Going back on that, it seems to me the very decision not to enforce shoplifting law is a value judgment, saying that somebody's property doesn't mean that much, it's not morally reprehensible, these people need the money, we're not going to prosecute them, they don't have anything. I mean, the whole discussion is moral. And it's not just the enforcement of it and driving on the left side of the road or the right side of the road or paying taxes. I mean, it has a moral component about it, the ownership of property and the deprivation of people's property and whether it should be enforced or not enforced and how difficult that is and whether that's good or bad and whether these people are poor people and should be prosecuted. These are all value judgments. From my understanding in California, it's not a matter of prosecutorial discretion. It's just a matter of budgetary resources and a perhaps ill-advised proposition. These prosecutors are making public announcements that they're not going to. There's about four or five of these prosecutors across the country that have decided there's a whole range of crimes they're not going to enforce. That's the same type of debate. Well, that's not anywhere in the record, and certainly the government doesn't rely on that. No, it's not. Okay. I would like to just address the incest example because I think that's actually a very instructive counterexample. Now, you could poll as many people as you wanted about whether two consenting adults, whether it's immoral for two consenting adults to engage in incest, and I'm sure at least 99 out of 100 would say absolutely that is immoral. When we're looking at prostitution, the answer from the public polls we have, it's maybe, you know, 40, 50 percent say no, that's not immoral at all. It's perfectly fine. It shouldn't be a crime. My question is, is prostitution good for society or does it degrade society? The question, I don't think the question is whether it is a positive good for society. It's whether it degrades society. That's what a moral norm is. It orients to the notion of good, the moral sense in human beings. Right and wrong, that's what moral means. Your Honor, DUI is not good for society. No one would say that. But it is black letter law that DUI is not a crime involving moral turpitude. It's actually the same with simple possession of narcotics. No one would say that's good for society. But it is, again, it is black letter administrative law that both. Turns out in South Carolina, the state of South Carolina says possession of narcotics is a crime of moral turpitude. Well, the board has held for decades that it's not. No, no, I'm just saying, like, my point is, is like, not necessarily. I get in this particular context it is, but, you know, people can make different moral judgments about it. Certainly. But in the immigration context, those, my point is simply that behavior doesn't have to be a positive good for society, simply not to be a crime involving moral turpitude. It just simply cannot. The ultimate question is whether it's base, vile, and reprehensible. And, again, if upwards of half the country doesn't think conduct should even be a crime, I don't see how it can meet that standard. If I could just cite one final case in closing, since Your Honor brought up the sodomy example. In a 1981 case called Nemetz, N-E-M-E-T-Z, 647 F-32, this court held that sodomy was not a crime involving moral turpitude for purposes of the immigration laws. That was prior to Bowers v. Hardick. That was at a time when most states still criminalized sodomy. And I think that decision looks very wise in retrospect. And I think the tide is turning on this issue just as it did on sodomy. And so I think, at a minimum, the court should remand this case to the BIA to provide the type of explanation that, as Chief Judge Jay has noted, has been lacking in all of the precedential decisions that the other side has relied on. All right. Thank you. Thank you. Thank you both or all three counsel for your arguments. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, Paul V. Niemeyer, Julius N. Richardson